This is our first case of the afternoon, Durbin v. Honeywell, 410-0406, for the appellant Mr. Kelly, for the appellee Mr. Hecht, Mr. Lloyd, and Mr. Simpson. You may proceed. Good afternoon, your honors. My name is Andrew Kelly. I'm from the law firm of Wilder Corwin Kelly in Bloomington, and I represent the plaintiff appellant, Leanna Durbin, in this case. She filed this case on behalf of her mother, Freda Barton, and I know you've had the briefs in front of you. You've had an opportunity to review them all, but this case comes before you with respect to a motion for summary judgment that was granted by the trial court. And as much as there were a number of issues that people had briefed in their motions for summary judgment, the only one that was really argued, the only one that was extensively briefed to the trial court, and the one upon which the trial court ultimately ruled in favor of the defendants on, is the one that I'm going to spend my time on today. I think there were a couple defendants that argued other things in their briefs, but I'm going to focus my remarks today on those issues which pertain to the exclusion of two documents, one being the coroner's death certificate, and the other being the coroner's report of investigation with respect to the cause of death of Freda Barton. And as the court is well aware, those are the two documents, they're the only two medical records, the coroner's records, which remain today with respect to Freda Barton's diagnosis, which in this instance was mesothelioma. She worked at a plant where she was exposed to asbestos and developed that particular disease. I'm here before you today asking you to reverse the trial court's ruling for basically two reasons. One, the two documents which I mentioned before are admissible, and they should have been deemed admissible for purposes of a summary judgment motion by the trial court at the time the motion was heard. And there have been some changes in the law with respect to these types of records since that point, but as of the time that this motion was heard by the trial judge, they were admissible and they should have been considered for purposes of summary judgment. And then the other reason why I think that the court should reverse the trial court's ruling is the fact that these particular documents could have also been considered in conjunction with plaintiff's expert's opinion. Plaintiff had an expert that not only looked at the records but was provided the exposure history of Freda Barton and concluded that not only did she have mesothelioma, it was caused by asbestos, and he offered opinions with respect to those two issues. And the trial court refused to consider those opinions of plaintiff's expert, Dr. Arthur Frank, for the simple reason that the trial court said the death certificate and the report of investigation of the coroner were not reliable documents that could be considered at the summary judgment stage under Wilson v. Clark, which is a Supreme Court opinion. If I start first of all, the two documents, they exist in the record at 2731 to 2732 and they're attached in plaintiff's appendix at pages 1 and 2, and that's the certificate of death and also the physician's report of investigation. There's a couple things that are of significance with respect to those documents. Number one, there was no autopsy performed with respect to Ms. Barton, and I expect what you're probably going to hear from the defendants is that somehow makes the documents less credible or less admissible under the statutes that existed at the time. Those documents, number one, the report of investigation is one that was sworn to and certified by her then treating physician, Dr. Domitz, that based on his knowing and knowledge and having treated her with her condition, that that is what he believes she had, and it indicates she had mesothelioma stage 4 at the time of death. The death certificate also indicates there was no autopsy as well, and one of the cases which I've cited is People v. Kennedy, and it's a case where one of the things that the appellate court in that particular case noted is that in an instance where there is no autopsy, there is almost greater credence given to what the cause of death is in the death certificate for the simple reason that it can be assumed or implied that there is no controversy as to what the cause of death was at the time. So those are the two documents we're dealing with. They were both certified copies from the Tazewell County circuit clerk of her cause of death and the report of investigation which led to the then Tazewell County coroner certifying her cause of death as mesothelioma. I'll start first of all with there's two sections of law, two statutes which were largely argued to the trial court. The first one was 735 ILCS 5 backslash 8-2201, part of the Code of Civil Procedure, which generally says that coroner's records can be admitted as evidence in negligence cases but not to prove a fact in controversy. One of the things that came up in this particular case is plaintiff offered those two particular documents. They're both certified copies and one of the things the defendant stated, at least some of them did anyway, was well, we contest that it was mesothelioma. And as I mentioned in the papers, in the record at volume 22 at pages 41 to 42, during argument to the trial court, one of the defendants indicated when asked a pointed question by the trial court that they had no basis to dispute she didn't have mesothelioma, but they were contesting that particular issue. The only documents we have are these two documents. They both indicate that she had mesothelioma, but yet they were claiming that there was a controversy with respect to that diagnosis. I pointed out in the papers that one of the things that the defendants argued was, well, we don't think she had mesothelioma, but at the same time, with respect to the complaint, a number of the defendants had never even denied that allegation itself. It was not a good faith basis to deny that that fact was in controversy. For instance, Sprick & Sons Corporation, which is one of the defendants before you, I don't believe they're arguing today, but they never even answered the complaint. A number of other defendants asked for strict proof thereof, but didn't file the requisite 2-610B affidavit with respect to want of knowledge. So as much as they claim there was a controversy, the only thing on the record with respect to her diagnosis was the fact that she had mesothelioma. That was the sole thing on the record, and the defendants admitted, at least one of them did very pointedly at the trial court level, that they had nothing to contest that diagnosis. The second statute, which is pertinent to the understanding of this particular case, is 725 ILCS 5-115-5.1, which is one that essentially states that coroner's records can be considered public records and can come in as evidence in certain instances. And just to give you a bit of a history, I pointed it out in my papers, is back in the common law, coroner's records were given a heightened view in terms of their trustworthiness and were considered admissible. And in 1919, the Spiegel case, S-P-I-E-G-E-L, came out, which essentially turned it completely the other direction and basically said coroner records don't come in in terms of evidence in order to prove a particular fact in cases. That's been carved away over time, and in 1982, the legislature actually put in place what was the section that the trial court considered of section 1.15-5.1, which says that coroner's records can come in in certain instances. Since that time, and I'm not going to spend a lot of time on it today, but the Supreme Court has adopted what has been codified as the Illinois Rules of Evidence, which has taken the whole issue of public records back to where it was pre-Spiegel. Essentially, the Illinois Rules of Evidence, it's sections 803 and then also 902 for authentication, discuss how in terms of public records, records that are mandated to be maintained by a particular agency or a public officer, when certified, the facts that are contained therein, and without limitation to any document, can be admissible in evidence in order to prove a fact at trial. That's what the rules are as they exist today. That's what the federal rules of evidence have been for a number of years, and I noted in my papers there's a number of other jurisdictions that have allowed these types of records to come in previously in similar circumstances. But pre-1982 in Illinois, these types of records didn't come in. After 1982, it was in a different set of circumstances. But as of today, if we were to have a trial in this particular case, the certified death certificate of Freda Barton and the coroner's investigation report, both of which say she has mesothelioma, would come in as prima facie evidence of her condition at that particular time. And that's an important distinction because one of the things in this particular case is this was a summary judgment issue, whether it was a genuine issue of material fact. And these records, if they come in as prima facie evidence, is enough to get past summary judgment on this particular issue as to what was her condition. The defendants are still free to argue at trial, and they do in our trials. We have other asbestos cases obviously. Very seldom in these cases do the defendants actually undo the diagnosis in the sense that they say plaintiff says they have mesothelioma and we say the individual doesn't have mesothelioma. Usually what we're faced with is situations where the defendants say your person might have mesothelioma, they might have something else, but it was not our asbestos that caused it. And the distinction in this particular case is the only purpose for which the death certificate was being offered was the simple point that she had mesothelioma. There's nothing in the death certificate that says it was mesothelioma caused by asbestos, nor does it say it was mesothelioma caused by asbestos of defendant Owens, Illinois or Nemo Apex or what have you. And what we were really offering it for was the simple purpose of what was the condition of the person at death as opposed to what was the cause of the development of that condition. And that was what was being offered. We cited the Maddox case, which is 132 ILF Second 109. It's a second district case from 1971, which to go back to where I was earlier, it's a post-Spiegel case but pre the 1982 amendment of Section 115-5.1. And it's a case where it was an insurance coverage case related to a gunshot wound and the jury was being asked to determine was it a self-inflicted injury or a gunshot wound. Was it a self-inflicted suicide gunshot wound or was it an accidental wound and part of the facts were the person had been drinking and such beforehand and that was what they were being asked to determine. And at the time where coroner's records and death certificates didn't come in as evidence, the second district affirmed the decision of the trial court to allow the death certificate to come in in that instance for the limited purpose of proving that the person had died as a result of a gunshot wound to the chest. And the court noted the distinction the second district did in saying the death certificate was not being offered to show whether it was a suicide or whether it was an accidental death, simply that the condition at death was that that person had died as a result of a gunshot wound to the chest. And that's exactly why we were offering it in this instance. That kind of brings you back to whether mesothelioma was a fact in controversy, doesn't it? I think it does somewhat. And in Maddox there was no controversy that the person died from a gunshot wound. The controversy was whether it was accidental or self-inflicted. Right, what the cause was, correct. And I think the distinction with this particular case is, as I pointed out before, there is nothing in the record that points that it was anything other than mesothelioma. And I expect what the defendants will say when they get an opportunity to speak is that, well, you know, she was diagnosed in 1976. She didn't die until 1982. That's a little longer than you'd expect for someone with mesothelioma. They're still free to argue that. And they may get their way with the jury on that particular issue. This was a summary judgment position, which is, are there genuine issues of material fact? And all we were trying to show was the disease at death. There was nothing competing with that, saying it was something different. That's what she was diagnosed with. The family's understanding of what she had, which was probably more layman's terms of description of what the doctor had told her mom than anything, was that it was a cancer of the lung or a cancer of the lining of the lung, which is essentially mesothelioma. But they didn't know that word, of course. But, I mean, the truth is, is it all sort of links together, and they all support each other with respect to what the diagnosis was. The word's pretty important, isn't it? It is. And there are other forms of lung cancer. Sure. And the use of the word itself, doesn't that get you over a hurdle, i.e., the hurdle of the connection between mesothelioma and asbestos exposure, as opposed to any lung cancer? I agree with you. There's a distinction between lung cancer and mesothelioma. I mean, lung cancer, I think most people are familiar, can be caused by a lot of different things. Mesothelioma, I think today, if you ask lay people, generally, they're probably going to say that they know mesothelioma is caused by asbestos because they see commercials and stuff like that on TV. But in all of our cases, and I expect that the defendants, when they get an opportunity to speak, will say the same thing, is there are other things other than asbestos that can cause mesothelioma. And I think the scientific and medical literature says anywhere from about 70 to about 90 percent are caused by asbestos. And there are some other, I mean, this is a plural mesothelioma, one of the lung, with peritoneal mesothelioma in the abdomen, I think it's a little bit lower percentage of which are actually related to asbestos. And then there's a whole line of literature going both directions on whether it's, if it's a female person as opposed to a male person, as to what the percentage of accuracy on it being based as an occupationally exposed asbestos exposure as opposed to something else. But there's other things. And one of the things the defendants often point to is, you know, whether they received a certain virus inoculation during certain years. There's been some indication it can cause that. Therapeutic radiation. There's other things that can potentially cause mesothelioma. But I think, at least nowadays, I think most people are familiar with the fact that that's the kind of cancer that can at least be caused by asbestos. Going back to the time that Freda Barden was fighting this disease and the time that she ultimately succumbed to it, I don't think that was the case back in the 80s. In fact, I think most of the literature that discusses the knowledge of people with respect to asbestos disease would say the other thing, which is most people didn't even start learning that asbestos even caused disease until the mid to late 1980s, let alone knowing that it caused mesothelioma. But with respect to both of these issues, under Section 115-5.1, coroner's records can come in to evidence. And that's one of the things that the trial court looked at. And if you look at that particular statute, there's basically three paragraphs. And where the court came out was, number one, there was no autopsy. So apparently his understanding was that there was less reliability with respect to the results that were placed in the death certificate. And as I mentioned before, People v. Kennedy actually says the opposite, that where there is no autopsy, you can assume there was less controversy with respect to the actual diagnosis itself. But ultimately where the trial court came out was the fact that there was no one that had personal knowledge still alive that would be able to testify to the facts that Mr. Hallis, who was the Tazewell County coroner at the time, or Dr. Dominance, who was her treater at the time, placed into those two documents, the death certificate and the investigation of report. That was ultimately the conclusion reached by the trial court, and I think it was there. And the reason is that if you look at the third paragraph of Section 115-5.1, it says right in there that another individual that has the responsibilities of maintaining and keeping the public records of the coroner's office can testify to the contents of them and can testify that they are kept in the ordinary and usual course of business and that those types of documents are still admissible. So there is no requirement that the person that actually signed as the coroner  You have a right to cross-examine people if you wish to under that particular statute, but it doesn't violate the right of confrontation if that person isn't alive and isn't able to actually testify as to those facts. And the case on that is People v. Pitchford, which is a case that explicitly stated it doesn't violate the confrontation clause by not having the actual certifying coroner testify about the results. And if I remember right, that was a murder case where they talked about the fact that an assistant deputy coroner testified and not the one that actually conducted the review. My last argument is with respect to Dr. Frank. Dr. Frank was Plano's retained expert. And as I mentioned before, just having the disease mesothelioma in this case wasn't enough to get past summary judgment. And those two documents supported just what her condition was at the time of death. We had an expert, Dr. Arthur Frank, who looked at the certificates, looked at the documents, and established an opinion that it was a mesothelioma caused by asbestos from the exposure history he was provided, and it was a pleural mesothelioma. And the court did not consider those particular opinions because he stated that an expert could not rely on those documents because they weren't reliable. As this court knows, Wilson v. Clark says that experts can rely on all kinds of records that are related to the medical history of the individual, even if not in evidence, and can always answer hypothetical questions with respect to those types of records. Dr. Frank was provided those records. They are reliable, and we actually provided some information with respect to some depositions taken in other cases where doctors in this community were stating that they relied on death certificates as part of their practice. It also goes to the very fact that these are the kinds of records that, even under the common law, were considered reliable because of their inherent trustworthiness. And if we get back to the Illinois Rules of Evidence, we're back at a position where these records are considered to be trustworthy, which is why certified copies of them can come in, because they're maintained by a public official. There's nothing that's suspect about them having been kept. There's no motivation to falsify them or what have you. They're the kind of records that are considered by doctors and are reliable. And under Wilson v. Clark, the expert opinion with respect to those should be considered. I see that I'm out of time. Again, I'm asking that you reverse this decision of the trial court and remand for further proceedings. Thank you, counsel. We'll hear from you on rebuttal. May it please the Court, Neil Lloyd on behalf of Owens, Illinois. This is the stalest of stale claims. The 25 years that passed between Mrs. Barden's death and the filing of this lawsuit in 2007 corroded the evidentiary records that existed, leaving only three documents that have any bearing at all. Counsel, in his opening argument, said nothing about the third document, which was rejected on reconsideration, was only offered on reconsideration. The two documents that were offered were barred as a matter of statute by the Illinois legislature. The fact that they existed and supported just a bare conclusion doesn't make them admissible as evidence. So the trial court was well within its discretion in barring those documents, there being nothing else granting summary judgment. I'd like to spend, as we've divided the argument, just to give the Court a brief roadmap, my time principally on those documents and the evidentiary record, and then say something very brief about civil conspiracy. Then Mr. Simpson is going to address the alternative ground that many of the statutes of limitation, and Mr. Haft will address the 610B issue that pertains just to his claim. In terms of just a brief point about civil conspiracy, we've raised that in our papers as an alternative ground. The thing I think is important for this Court to consider, and that we would urge the Court to take up, is that the McClure decision does inform how a trial court considers the evidence on summary judgment. The sufficiency of the evidence, the determination whether there is a triable issue, is the same at the J&OV stage as it is at the summary judgment stage. And it would be important if the Court were to do that, because so far the trial courts in McLean County have been reluctant to apply McClure. They see it as just a J&OV opinion. And that's not what this Court did in Burgess. It was a J&OV situation, but the Court in Burgess was willing to grant J&OV looking at the record. It's the same kind of thing as summary judgment. Turning to Mr. Kelly's argument specifically on these documents, he hasn't made an argument that the Illinois evidence rules apply retroactively. It's a complicated test, obviously, for whether they would apply retroactively. They don't. I'll get to that a little bit later in my argument. He's actually mistaken when he refers the Court to 803.9 concerning vital records. It's a laundry list. The Court may be aware of so-called modifications. That's not one of the modifications. And the general canon of specific controls, the general here, you've got a statute that says that absent an autopsy, these coroner's records are not admissible. That's a determination the legislature has made concerning the reliability of those documents. Mr. Kelly said, we have a sworn statement by the doctor that this is the cause of death, and he's correct in saying that that was the belief of the doctor at the time. The issue for this Court, the issue for the trial court in summary judgment, was not what the doctor believed. The issue is what disease she actually had. And that's where cross-examination comes in. The doctor swore under oath he could have had a good faith, honest belief that that's what she had. We have no idea what tests he performed. We have no idea what the biopsy results were. Of course, we know that there was a biopsy, at least by inference from this letter that came from one of Mrs. Barton's doctors to a lawyer who was considering filing a claim on her behalf or representing her back in 1976. And when I say that the record has been corroded, the evidentiary record has been corroded, what I hope the Court can grasp is these things did exist. I mean, Mrs. Barton was hospitalized. She received medical care. There were tests that were done. Justice Connacht, you made the point, doesn't the word mesothelioma get you over a hurdle? Yeah, it gets you over a big hurdle. They're going to argue if this case goes back. They're saying it's prima facie evidence. They think it gets them over the finish line. They're going to show the relationship between mesothelioma and asbestos and say clearly she had some asbestos exposure, they'll say. She had this disease. She had this disease. Dr. Frank says she has the disease. Well, experts can rely on hearsay, but experts have to rely on something. What was Dr. Frank relying on? His deposition testimony is very clear. He read the two documents. It says mesothelioma, so I believe it. Did he do any testing? Did he have any evaluation of the biopsy? How does that dovetail back then to the statute? The way it dovetails back to the statute is an autopsy is a sophisticated series of protocols that a medical examiner undertakes, and she or he leaves behind what? Leaves behind a record of all the tests that they ran. Well, what if the tests that they ran, they did three, and the diagnosis for a particular disease would require five? Well, then you do have a basis to cross-examine. With a trial, a judge ruled in excluding Dr. Frank was that there would be no way for the defendants to confront the witness. That wasn't an abuse of discretion. The comment, how do you grapple with this conclusory statement, very difficult to grapple with that on cross-examination because what are you going to say? Well, I looked at this document. Well, were the tests properly run? Could he have been mistaken? Did you do the things that you would have done? An autopsy, we know from the legislature then, can come in as long as you have somebody testify that yes, it was kept in the ordinary course of business, so we've got this particular record. Well, an expert could look at that and say, that looks to us like it was a misdiagnosis. That looks to us like it wasn't particularly proper, or she lived too long, or various other things for this particular diagnosis. The brief thing I, actually I think, unless the Court has any other questions, I think I should turn it over to Mr. Simpson at this point. May it please the Court, Brayden Simpson for NUMO-ABEX. Just briefly, touch on something that you mentioned, Justice Turner, as far as the Maddox case. The Maddox case is distinguished because there was no controversy or dispute. The man died of a gunshot wound. That's exactly the distinction that Judge Brzezinski made at the summary judgment period. He said, here, unlike in Maddox, this is page 77 of the hearing transcript, there is a dispute with respect to the plaintiff's diagnosis at death. Judge Brzezinski made that finding and understood there to be a dispute concerning the diagnosis at death. I'm somewhat puzzled that the appellate argues that there was no basis for any dispute about the diagnosis, because Judge Brzezinski certainly said that there was, and understood that based upon the pleadings and papers and arguments being made. In response to Judge Brzezinski's comment, the plaintiff did not challenge that and say there's no dispute. The plaintiff did not raise any pleading issues that I believe Mr. Haight will discuss under 2610B and didn't argue that Mr. Scott, on behalf of Pneumoavex, conceded that there was no dispute about mesothelioma in this case. In fact, to the contrary, what Mr. Scott argued, and it was actually on the motion for rehearing at page 42, Mr. Scott said on behalf of Pneumoavex, these two pieces of paper are not reliable because we can't cross-examine any of the doctors who are here and we are stuck. There's nothing that the defendants can show to an expert. That was an argument made not only by Pneumoavex, but by all the other defendants. And Judge Brzezinski explicitly adopted that argument and agreed, because at the hearing transcript on pages 78 and 79, Judge Brzezinski says, there is nothing here other than conclusory statements that are unsupported by autopsy, toxicology, and medical records. In essence, there's no way for the defendants to attack the findings of either Dr. Donitz or Dr. Halley other than by arguing the same to the jury. So far from conceding that there was no dispute about the diagnosis, Mr. Scott was pointing out an argument that Judge Brzezinski accepted, that there's no way the defendants can deal with these issues because there's no reliable records left. All we have are two pieces of paper that are conclusory statements that are nothing like what the Supreme Court said in Wilson v. Clark someone can rely upon in getting a diagnosis. Now let me segue briefly into the statute of limitations point because the ruling that Judge Brzezinski made, that there is no way for the defendants to defend themselves against these two pieces of paper because they're completely conclusory statements, is not only a basis for upholding the summary judgment because there's insufficient evidence for the diagnosis, but also on the ground of the statute of limitations. The statute of limitations is there to prohibit the prosecution of stale claims whereas here the documents are no longer available. Evidence has disappeared. That is classically the reason for a statute of limitations defense being accepted by courts. And that fits in precisely with what Judge Brzezinski commented correctly at the hearing. There's no way for the defendants to defend themselves because we have only two pieces of paper that are conclusory statements and there's no way that anybody can get behind that and actually join the issue. And so therefore a statute of limitations defense would also be proper in this case. And the courts have weighed in statute of limitations cases the relative injustice in determining whether a discovery rule should ever be applied. The court did that in the Advinculi case, 176 Illinois 2nd, page 1. The court said, well, in that case there wasn't any injustice to the defendant. Here, the opposite extreme, there's extreme injustice to the defendant and there is no injustice to the plaintiff. Why is that true? Because mesothelioma's relationship to asbestos was certainly knowable in 1982. Dr. Frank testified in his deposition that it was knowable in the 1970s. It was certainly knowable in the 1980s. It was certainly knowable in the 1990s. It was certainly knowable up until 2005, which is still more than two years before this lawsuit was brought. So in balancing the injustice, which courts will do in determining whether any discovery rule should be applied, we have in this situation Judge Brzezinski's correct assessment that the defendants can't defend themselves because there's nothing left for them to look at and challenge these pieces of paper. On the other hand, we have a disease that is well known to be related to asbestos. The information was available to the family at the time and it is certainly knowable. So there's no injustice. It's not the situation where no one knew anything about this disease. It's not a situation where no one, or in some of the cases where doctors or someone may have hid what happened in the hospital. There's no circumstances like that. So weighing the relative injustice in this case, as a matter of law, there should be no discovery rule applied. Now, it's also our position that under the Wrongful Death Act that there's no potential for applying a discovery rule. This court, the Illinois Supreme Court, has not yet ruled whether there's any discovery rule that applies to the wrongful death statute. Historically, and by its very language, the Wrongful Death Act doesn't admit of a discovery rule being applied. It has been applied in the COVID case, the puree case, in cases involving medical malpractice where the legislature has also enacted a statute in medical malpractice cases that adopts a discovery rule. So the court dealt with those issues. But in the recent cases of Pasquale, the case at Dinkula, which said there's a discovery rule in the survival statute, but not in the Wrongful Death Act because the survival statute doesn't create a new cause of action. The history behind the Wrongful Death Act is that the filing of the suit within two years of the death is actually a condition of the liability. I don't think the court has to decide that in this particular case, and hasn't in other cases, and neither has the Illinois Supreme Court, because regardless of that argument, in this particular case, Judge Verzesky's correct assessment of the injustice to the defendants, not having any kind of information left, is a classic example of why there should be no discovery rule applied in this particular case. While he did not rule on the statute of limitations below, as the court is aware, a summary judgment may be affirmed on any ground that shows the judgment to be correct. It was certainly an issue that was briefed and argued in the papers, and it is also an alternative basis for an affirmance of the summary judgment. Didn't Judge Verzesky deny the motion to dismiss that was filed? Yes, he did. Based on statute of limitations? He did, and he did under the proper procedures that will find out what the discovery shows, that the pleadings themselves, at least paragraph 26 of the complaint says we didn't know, and so he denied the motion to dismiss to see how the case would develop at the summary judgment stage. The only thing we have are these two pieces of paper, and under these circumstances, no discovery rule should be applied, even if the wrongful death act were interpreted by the court to have a discovery rule. Unless there are other questions, I will defer to Mr. Hayes. Thank you. Good afternoon. May it please the Court, my name is Steve Hayes, and I represent Honeywell. First, thank you for granting me leave to address the one issue. As forecast, I will address only 2610B. We cited several cases under brief, but the proposition that if an issue under 610B is not raised in the trial court and is waived, the plaintiff did not challenge that case law in her brief. So the only issue is whether it was raised in the trial court. The plaintiff had four opportunities in the trial court to raise the 2610B issue. In written response to the summary judgment motions, it was not raised. During the oral argument on the summary judgment motions, the trial court even said an issue, there was a dispute about the diagnosis of mesothelioma. So it was teed up right there. The plaintiff said nothing about 2610B. The plaintiff then filed a petition for rehearing that you've heard about. Nothing was said in that about 2610B. And then in the hearing on May 4, 2010, again, nothing was said about 2610B. So the case law is agreed upon that the issue is waived without raising the trial court. The plaintiff had four opportunities to raise it in the trial court and did not. As a result, that argument as to the cause of death is waived. If there are no other questions, I thank the court. Thank you. Thank you. Thank you. Rebuttal? I'll start where we finished, which is this argument about 2610B. First of all, at the trial court level, and I pointed to it in my reply brief, I raised the fact to the trial court that this was not a good faith dispute that they were raising with respect to this concept that the diagnosis of mesothelioma was in controversy. And this is one of the examples of it, which is the fact that a bunch of these defendants didn't even deny that fact in their pleadings. And then, of course, we know that they didn't have any evidence that's in this record that shows that she had something other than mesothelioma. The other issue that I want to touch on really briefly is the first thing that was stated by Owens, Illinois' lawyer, which is about civil conspiracy. First of all, I think there's about six cases that are in various stages of briefing right now where the actual issue of Owens, Illinois' participation in a civil conspiracy under the McClure case and then the subsequent Dukes case that Justice Kinect authored the opinion on. There's going to be plenty of opportunity for this court to hear those issues. But there were two inaccuracies in what he stated, one of which was that McClure set the test for motions for summary judgment. It didn't. In fact, Justice Kinect pointed that out in the Dukes opinion itself, that that was a case on motion for JNOV. And then the other thing that was stated was that the McLean County courts had been applying McClure incorrectly. The one thing I'll just say is this, which is McClure is something that is considered by every single trial judge in Central Illinois where we have its bestest cases, not just McLean County, and the record upon which they're considering those cases is vastly different from what was considered in McClure. Vastly different. And I think Justice Kinect, you noted that as well in your opinion in the Dukes case as well. So I'm not going to go into details, but there were some inaccuracies. The one thing that was raised, I think in the largest subject area by all three people that argued, was the statute of limitations issue. And I think you were told a number of things. I think I heard something about this is the classic reason evidence has disappeared, why you should not apply the discovery rule in this case. As a simple matter, the discovery rule does apply to wrongful death cases, and it's been applied to wrongful death cases. In fact, if you just look at ABEX's brief at page 35, ABEX lists about six cases where the wrongful death claims in that case had the discovery rule applied to it. First district cases, second district cases, I think even a third district case. But they all start based on the Coleman v. Hinsdale Emergency Medical Corp case where the discovery rule was applied to a wrongful death case, and it makes absolute sense. If we apply the discovery rule based on fact issues where it's applicable to an individual while they're living, it makes sense to apply it to somebody after their family is trying to raise a case after they are deceased and they didn't have any knowledge with respect to what the injury was. But what if the decedent themselves had information about the disease itself? Well, and I think that it depends on the case, and I agree with you. There's instances where if the person already knew, then obviously it wouldn't apply. But it's a question, it's a fact question as to whether or not they knew. And in this instance, I don't think there's any evidence in the case that indicates that she knew. There was a document where... What about the letter to Heller from the Dr. Thompson? Right, and that's attached to Appendix 9 to 10. That particular document, all it shows is that her attorney was trying to get information with respect to what she could expect in terms of bills and damages and stuff. There was no indication about asbestos. We don't know what the basis for that letter was, whether she was trying to get Social Security or what have you, but there's nothing in there that gives any indication that she had knowledge at that time. But she had knowledge she was diagnosed with mesothelioma. Well, what we do know is what she told her kids, which is she was told she had cancer of the lung or cancer of the lining of the pleura. Her lawyer was told she was diagnosed with mesothelioma. Her lawyer was, right, in the letter, correct. But it's a fact issue, and I think if we look at cases like Knox College, these are all fact issues for a jury to determine. And 25 years in some cases may be far too long based on what the knowledge is. But in Illinois, we don't have the statute of limitations or discovery rule, I should say, that's based on you can only apply it up to a certain number of years. And there's obviously some cases where two years beyond the time of the statute is too long, or two days even. It's a fact issue. It's for a jury to determine whether or not, one, it should even be applied, and number two, if it's reasonable to apply it given the circumstances. And this is one of those cases where I think the evidence that's before the court and the record that we have is that the family didn't know until within two years of the filing of this complaint. And while there may be some things, admittedly, that Ms. Barden may have known in terms of what her diagnosis was, cancer of the lung or whatever it may have been, I don't think there's anything that rises to the level that she knew. And I think it's a fact question for a jury to determine. Let's assume for argument she did know. Let's say she knew she was diagnosed with mesothelioma in 1976, and she knew that mesothelioma was most likely caused by her exposure to asbestos during her terms of employment. You're not saying that a wrongful death action would still approve to the family once she died if she chose not to do anything about it during her lifetime? No, I'm not saying that. All I'm saying is that even if she knew she had mesothelioma, which is something that isn't part of this record, but if we assume that she did, that's not enough. She still has to know that it was wrongfully caused. And in 1982, I don't think people knew that as a general rule, and there's certainly nothing in this record to indicate to the contrary of what it is, which is she just knew she had lung cancer or cancer of the lung. Thank you. Thank you, counsel. We'll take a matter under advice.